UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────

NorGUARD INSURANCE COMPANY,

               Plaintiff,

     v.

SOHO HUMMUS, LLC, d/b/a 19 CLEVELAND BY
NISH NUSH; EYAL HEN; FONTANA REALTY LLC;
JOHN ILIBASSI; DAVID CHEN;
FRIENDS OF PETROSINO SQUARE;
GEORGETTE FLEISHER; CHRISTINE SPERRY;
MARNA LAWRENCE; PAUL HALLASY;
FIREMAN'S FUND INSURANCE COMPANY;
AMERICAN AUTOMOBILE INSURANCE COMPANY,

               Defendants.

───────────────────────────────────

**COMPLAINT**

Case No.:

     Plaintiff, NorGUARD INSURANCE COMPANY ("NorGuard"), by and through its attorneys, HURWITZ FINE P.C., as and for its Complaint against Defendants, SOHO HUMMUS, LLC, d/b/a 19 CLEVELAND BY NISH NUSH ("Soho Hummus"); EYAL HEN ("Hen"); FONTANA REALTY LLC ("Fontana"); JOHN ILIBASSI ("Ilibassi"); DAVID CHEN ("Chen"); FRIENDS OF PETROSINO SQUARE ("Friends of Petrosino"); GEORGETTE FLEISHER ("Fleischer"); CHRISTINE SPERRY ("Sperry"); MARNA LAWRENCE ("Lawrence"); PAUL HALLASY ("Hallasy"); FIREMAN'S FUND INSURANCE COMPANY ("Fireman's Fund"); AMERICAN AUTOMOBILE INSURANCE COMPANY ("AAIC") (collectively, "Defendants"), alleges upon information and belief:

     1.    NorGuard Insurance Company is an insurance company domiciled in Nebraska and with its principal place of business located in Wilkes-Barre, Pennsylvania.

2.      NorGuard is licensed to issue insurance policies under the laws of the State of New York, including the insurance policy issued to Soho Hummus.

3.      Soho Hummus was and still is a limited liability company incorporated and with its principal place of business in New York, New York.

4.      At all times pertinent, Soho Hummus was and is the owner of the restaurant, 19 Cleveland ("the Restaurant"), located at 19 Cleveland Place, New York, New York.  Soho Hummus has had a lease with Fontana since June 2017.

5.      Fontana was and still is a limited liability company incorporated and with its principal place of business in Nassau County, New York.

6.      Fontana was and is the Owner of 19 Cleveland Place, New York, New York 10012 (the "Premises").

7.      Hen was and is a citizen of the State of New York. Hen is a principal of Soho Hummus, and an owner and the manager of the Restaurant.

8.      Ilibassi is a principal of Fontana and was and is a citizen of the State of New York.

9.      Chen is the registered managing agent for the Premises and was and is a citizen of the State of New York.

10.     Fontana, Ilibassi, and Chen are collectively referred to as the "Landlord Defendants."

11.     Soho Hummus and Hen are collectively referred to as the "Restaurant Defendants."

12.     Friends of Petrosino is an unincorporated neighborhood association and a neighborhood partner of the Historic Districts Council, a 501(c)(3) organization, registered with Community Board 2-Manhattan. Upon information and belief, each of the members of the

unincorporated association were and continue to be citizens of the State of New York at all times pertinent.

13.    Friends of Petrosino advocates for the preservation of Petrosino Square and the surrounding vicinity.

14.    Fleischer was and is a citizen of the State of New York residing in New York County. Fleischer resides in Apt. 4A at the Premises, as a long-term, rent-regulated residential tenant. Fleischer is the President of Friends of Petrosino.

15.    Lawrence was and is a citizen of the State of New York residing in New York County. Lawrence resides in Apt. 1D at the Premises, as a long-term, rent-regulated residential tenant.

16.    Sperry was and is a citizen of the State of New York residing in New York County. Sperry resides at the neighboring 21 Cleveland Place, New York, New York, Apt. 2B, as a long-term, rent-regulated residential tenant. Sperry is the Treasurer of Friends of Petrosino.

17.    Hallasy was and is a citizen of the State of New York residing in New York County. Hallasy resides at the neighboring 17 Cleveland Place, New York, New York, as a long-term, rent-regulated residential tenant.

18.    Friends of Petrosino, Fleischer, Lawrence, Sperry, and Hallasy are collectively referred to as the "Tenant Defendants" or the "Underlying Plaintiffs."

19.    Fireman's Fund is an insurance company located in Illinois with its principal place of business in Chicago, Illinois.

20.    AAIC is an insurance company domiciled in Missouri with its principal place of business in Chicago, Illinois.

21.     Friends of Petrosino, Fleischer, Sperry, Lawrence, Hallasy, and Fireman's Fund are named as defendants in this declaratory judgment action in order for complete relief to be afforded to all parties that may be impacted by this action.

22.     NorGuard seeks a declaration that it has no obligation to defend or indemnify Soho Hummus, Hen, Fontana, Ilibassi, Chen, or anyone else in connection with the Underlying Action and that it may withdraw from their defense in the Underlying Action.

23.     NorGuard also seeks a declaration that Fireman's Fund and AAIC have a duty to defend Soho Hummus, Hen, Fontana, Ilibassi, and Chen in the Underlying Action commenced by the Tenant Defendants and reimburse NorGuard for their respective share of the defense costs to date that have been advanced by NorGuard.

## JURISDICTION

24.     The liability insurance coverage dispute to be decided by this declaratory judgment action is a dispute between citizens of different states.

25.     NorGuard is a citizen of Pennsylvania. No defendant is a citizen of Pennsylvania. No member of Soho Hummus LLC is a citizen of Pennsylvania.

26.     The amount in controversy in this action, measured by the value of the object of the litigation and the pecuniary effect an adverse declaration will have on the parties to this action, exceeds $75,000.00.

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 2201 based upon the parties' diversity of citizenship and its monetary threshold.

28.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim are alleged to have occurred within this district. The insurance policy at issue was issued and delivered within this district, and

the events or omissions giving rise to the liability claim in the Underlying Action occurred within this district.

## THE UNDERLYING ACTION

29.     Petrosino Square is a small triangular park in lower Manhattan in New York City, bounded by Cleveland Place and Lafayette, Kenmare and Spring Streets at the juncture of the Little Italy, Nolita, and SoHo neighborhoods.

30.     The Summons with Notice was filed in New York State Supreme Court, New York County, styled *Friends of Petrosino Square; Georgette Fleischer, Christine Sperry; Marna Lawrence; and Paul Hallasy -against- Soho Hummus, LLC d/b/a Cleveland By Nish Nush; Eyal Hen; Fontana Realty LLC; John Ilibassi; and David Chen*, Index No. 155973/2021 (the "Underlying Action").

31.     In the Summons with Notice, the Underlying Plaintiffs/Tenant Defendants alleged that Soho Hummus, LLC d/b/a Cleveland By Nish Nush; Eyal Hen; Fontana Realty LLC; John Ilibassi; and David Chen engaged in persistent and ongoing harassment and abuse of the Underlying Plaintiffs in retaliation for asserting their legal rights as to the Underlying Defendants' alleged failure to comply with the Alcoholic Beverage Control Law (Chapter 3-B of the Consolidated Laws) ("ABC Law"); the Multiple Dwelling Law ("MDL"); the NYC Department of Transportation ("DOT"); the NYC Administrative Code 24-202 (NYCAC); the multiple breaches of warranty of habitability caused by Restaurant and Landlord Defendants and the creation by those Defendants of a public nuisance that interferes with the life, health, safety, and welfare of the Residential Tenants of 17 Cleveland Place; 19 Cleveland Place; and 21 Cleveland Place, New York, New York, 10012; and other members of the public in the vicinity; and the

collusion among the Restaurant and Landlord Defendants to drive the rent stabilized tenants of 19 Cleveland Place out of their homes.

32.    The Tenant Defendants alleged, in short, that the Restaurant and Landlord Defendants acted in concert in an attempt to force the tenants to abandon their rent-controlled apartments in order to increase the rent on said apartments.

33.    Soho Hummus holds an on-premises liquor license for the Restaurant, under license No. 1306106, which was issued by the New York State Liquor Authority ("NYSLA") with restrictions:  Entertainment was limited to "ambient background music," all windows and doors must be kept closed, and the closing time was set at 11:00 p.m.

34.    The Tenant Defendants alleged that Soho Hummus was fined shortly after the liquor license was issued, and the Restaurant Defendants sought to extend their hours to 2:00 a.m., to leave windows and doors open until 9:00 p.m., and to play louder music. The application was denied.

35.    The Tenant Defendants alleged that while the application was pending, the Restaurant Defendants played loud music after 11:00 p.m. and held private parties after hours.

36.    The Summons with Notice alleged that the Restaurant did not comply with rules regarding outdoor dining and has violated the law by:

    a)  Operating the business past the legal closing time of 11:00 p.m. and many times to 2:00 a.m. and later;

    b)  Permitting crowds to assemble on the sidewalk and lines of waiting cars and cars for hire to idle in front of the Restaurant;

    c)  Exceeding the limits under New York's Open Restaurants Program, by crowding tables on the sidewalk and street during the pandemic, without regard to social distancing or masks;

    d)  Permitting and encouraging excessive public drinking and unruly and dangerous conduct, including physical altercations and drunken brawls by the Restaurant patrons;

e) Permitting use by the Restaurant of the sidewalk and street in front of 19 Cleveland Place that does not comply with the law, is overcrowded and does not adequately protect patrons or the tenants of 17, 19, and 21 Cleveland Place;

f) Permitting patrons to block the residential entrances to 17, 19, and 21 Cleveland Place;

g) Permitting and causing garbage to pile up near and around 17, 19, and 21 Cleveland Place. Both Soho Hummus and Fontana have allegedly permitted garbage to pile up in the enclosed side yard of 19 Cleveland Place, causing a fire hazard and blocking fire egress; and

h) Playing loud music from an amplifier placed in the south wall of the Restaurant's roadway café at all hours, including the quiet hours mandated by the NYCAC, that regularly exceeds 60 decibels within the apartments of the tenants in 17, 19, and 21 Cleveland Place.

37.     It is also alleged that the Restaurant interfered with the quiet enjoyment of the Residential Tenants of 17, 19, and 21 Cleveland place and other members of the public.

38.     The Tenant Defendants alleged that Hen has harassed, physically threatened, and terrorized Lawrence, Fleischer, Fleischer's three-year-old daughter, and Sperry.

39.     Allegedly, Hen, with the acquiescence and encouragement of the Landlord Defendants, has taken over all three apartments on the first floor of the Premises except Lawrence's, and has played loud music at all hours of the day and night, in an attempt to drive her from her home.

40.     It is further alleged that the Landlord Defendants refused to respond and/or delayed responding to requests for repairs from Lawrence and Fleischer, as part of a deliberate attempt to force them from their homes.

41.     The Tenant Defendants alleged that the Restaurant and Landlord Defendants conducted an organized, willful, illegal, and continuous course of conduct to harass, threaten, humiliate and abuse the individual tenants in retaliation for them asserting their legal rights to a safe, habitable living environment. This alleged conduct is claimed to have caused the Tenant Defendants mental anguish.

42. The Summons with Notice sought injunctive relief against the acts complained of and an order that the Restaurant and Landlord Defendants comply with the ABC Law, MDL, the Department of Transportation; and the NYCAC; and a monetary judgment for damages in the amount of at least $500,000.00, together with punitive and exemplary damages; reasonable legal fees for the prosecution of this action; and for such other and further relief as may be just.

43. On July 28, 2021, the Tenant Defendants filed a Verified Complaint in the Underlying Action.

44. The Verified Complaint repeated the allegations asserted in the Summons With Notice.

45. The Verified Complaint further alleges that Hen knowingly made a false complaint to Child Protective Services against Fleischer.

46. The Verified Complaint also alleges that Hen followed Fleischer into the side yard at the Premises and deliberately brushed against her to frighten and intimidate her.

47. In the Verified Complaint, Lawrence alleges that she was physically grabbed and hit by Hen and restaurant employees at the direction of Hen and the Landlord Defendants. Hen and the restaurant employees allegedly chased Fleischer and physically menaced and blocked other tenants' entrance to the Premises.

48. As a result of the alleged conduct, the Tenant Defendants claimed that they were constructively evicted from their apartments.

49. The Verified Complaint seeks a declaratory judgment, injunctive relief, monetary damages for intentional infliction of emotional distress, breach of the warranty of habitability, legal fees from the landlords, and compensatory and punitive damages.

50.    On July 29, 2021, The Tenant Defendants moved for a temporary restraining order, filing supporting affidavits with the Order to Show Cause ("OTSC").

51.    The OTSC sought a TRO enjoining and restraining the Restaurant and Landlord Defendants and their affiliates, employees, agents, contactors and all others acting on their behalf.

52.    The court granted the TRO in the Underlying Action on August 13, 2021, restraining and enjoining the Restaurant and Landlord Defendants from:

a)  Blocking harassing, pushing, shoving, or threatening the Plaintiffs;
b)  Playing loud music or banging on the party walls from the apartments adjacent to Lawrence, Apartment 1D, 19 Cleveland Place New York, New York;
c)  Following, shouting at, forcibly touching or blocking the Tenant Defendants from entering or exiting their respective residential entrances at 17, 19, 21, and 23 Cleveland Place, New York, New York;
d)  Conducting, permitting, and hosting after hours parties, after closing time of 11:00 p.m., on the ground floor and cellar of Soho Hummus LLC at 19 Cleveland Place;
e)  Permitting loud music to be played in the ground floor and cellar of Soho Hummus LLC at 19 Cleveland Place;
f)  Permitting restaurant patrons of 19 Cleveland to block the sidewalks and/or block the residential entrances and egress of 17, 19, and 21 Cleveland Place, New York, New York;
g)  Permitting employees of Soho Hummus LLC to create loud noise, and crowding in the alleyway between 19 Cleveland Place and 21 Cleveland Place and back yard thereof;
h)  Permitting the blocking of the fire escapes located in the alleyway and/or back yard between 19 Cleveland Place and 21 Cleveland Place with restaurant garbage, employee lockers, construction debris and other items belonging to Soho Hummus; and
i)  Permitting loud music to be played through amplifiers in the three structures erected by Soho Hummus in front 19, 21, and 23 Cleveland Place.

## THE POLICIES

### NorGuard Policy Issued to Soho Hummus

53.    NorGuard issued BizGUARD Plus Businessowner's Policies to named insured Soho Hummus LLC, Policy Nos. SOBP998823 (effective September 7, 2018 to September 7,

2019), SOBP045032 (effective September 7, 2019 to September 7, 2020), SOBP177146 (effective

September 7, 2020 to September 7, 2021) (collectively referred to as the "NorGuard Policy").

54.    The NorGuard Policy provides coverage up to a limit of liability of $1,000,000 per

occurrence and $2,000,000 in the aggregate.

55.    The NorGuard Policy's main Businessowners Coverage Form (BP 00 03 01 10)

provides that the following qualify as an Insured:

**C.  Who Is An Insured**

    **1.**  If you are designated in the Declarations as:

***

        **c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

***

    **2.**  Each of the following is also an insured:

***

        **b.**  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

***

56.    The NorGuard Policy lists DBA NISH NUSH 19 CLEVLAND as an additional

named insured.

57.    The NorGuard Policy's Additional Insured – Managers or Lessors of Premises

endorsement (BP 04 0201 06) adds Fontana Realty LLC as an additional insured in the

endorsement's Schedule:

    **3.**  The person or organization shown in the Schedule is also an insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule.

***

58.     The NorGuard Policy provides coverage up to a limit of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate.

59.     Throughout the Businessowners Coverage Form (BP 00 03 01 10), the words "you" and "your" refer to the Named Insured shown in the Declarations.

60.     The NorGuard Policy's insuring agreement in the Businessowners Coverage Form (BP 00 03 01 10), as amended by the New York Changes endorsement (BP 01 15 05 18), provides as follows:

**SECTION II – LIABILITY**

**A.  Coverages**

    **1.  Business Liability**

        **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

            **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

        **b.**  This insurance applies:

            **(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

\*\*\*

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

\*\*\*

61.    The NorGuard Policy's Businessowners Coverage Form (BP 00 03 01 10) contains the following pertinent definitions:

**F.  Liability And Medical Expenses Definitions**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**  False arrest, detention or imprisonment;

**b.**  Malicious prosecution;

**c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**   The use of another's advertising idea in your "advertisement"; or

    **g.**   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

***

62.    The NorGuard Policy's Businessowners Coverage Form (BP 00 03 01 10) contains

the following pertinent exclusions, as amended by the NY Policy Customizations endorsement (

), providing that this insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" (including any unexpected or unintended portion thereof) if any "bodily injury" or "property damage" was expected or intended from the standpoint of any insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

**p.  Personal And Advertising Injury**

"Personal and advertising injury":

**(1)**   Caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)**   Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

***

**(15)  Discrimination/Harassment**
Arising out of discrimination, harassment or humiliation by an officer, director, member or partner of the insured.

***

**r.  Criminal Acts**

"Bodily injury", "property damage", or "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

13

***

**AAIC Policy Issued to Soho Hummus**

63.     AAIC issued Policy No. SAM 2003150-18 to Soho Hummus with a policy period of June 7, 2018 to August 12, 2018. The policy was cancelled prospectively, for fraud and misrepresentation, effective August 12, 2018 (the "AAIC Policy").

64.     The AAIC Policy provided limits of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate.

65.     The insuring agreement for the AAIC Policy provides the following:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*\*\*

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our

discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

***

66.    The AAIC Policy contains the following relevant definitions in Section VI - Definitions:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

***

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*\*\*

67.     Under the AAIC Policy, SECTION II – WHO IS AN INSURED provides the following:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

\*\*\*

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

\*\*\*

68.     Fontana is an additional insured under the AAIC Policy's Additional Insured – Managers or Lessors of Premises endorsement.

**<u>Fireman's Fund Policy</u>**

69.     Fireman's Fund provided four consecutive commercial general liability policies to Fontana covering the premises at 19 Cleveland Place:  HRG2005240-18 (June 1, 2018 to June 1, 2019);  HRG2005240-19 (June 1, 2019 to June 1, 2020); HRG2005240-20 (June 1, 2020 to June 1, 2021); HRG2005240-21 (June 1, 2021 to June 1, 2022). The policies are collectively referred to as the "Fireman's Fund Policy."

70.     The Fireman's Fund Policy contains a $1,000,000 per occurrence limit.

71.     Upon information and belief, the Fireman's Fund Policy obligates it to provide a defense and indemnity to the Landlord Defendants for the Underlying Action.

## COVERAGE CORRESPONDENCE AND RESERVATION OF RIGHTS

72.     NorGuard first received notice of the claim on July 13, 2021, by email from Morstan General Agency, including a Summons with Notice and ACORD General Liability Notice of Occurrence/Claim, dated July 13, 2021.

73.     NorGuard acknowledged receipt of the claim on July 16, 2021.

74.     On July 30, 2021, Fireman's Fund Insurance Company, the carrier for the Landlord Defendants, tendered coverage to NorGuard on behalf of Fontana, Ilibassi, and Chen pursuant to the lease of the premises to Soho Hummus.

75.     Under a reservation of rights dated September 9, 2021, NorGuard accepted the tender for Fontana and Ilibassi, asserting that the NorGuard Policy does not provide coverage for expected or intended injury and that the additional insured coverage for the Landlord Defendants only applies to the portion of the Premises leased to Soho Hummus – not the residential apartments.

76.     Fontana was added as an additional insured but "only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule."

77.     Ilibassi is the principal of Fontana and qualifies as an additional insured as a member of Fontana but only with respect to the conduct of the insured's business.

78.     NorGuard advised that Chen did not qualify as an additional insured under the NorGuard Policy because he is alleged to be the managing agent of Fontana, but the NorGuard Policy only provides coverage for any person or organization while acting as the real estate

manager for the Named Insured as shown in the Declarations only. Chen is not the real estate manager for Soho Hummus.

79.     NorGuard advised the Landlord Defendants that the alleged conduct and causes of action for breach of the warranty of habitability and legal fees directed against the Landlord Defendants do not arise out of the use of the Premises—19 Cleveland Place—leased to Soho Hummus, so NorGuard reserved its right to disclaim coverage.

80.     By letter dated September 17, 2021, NorGuard issued its reservation of rights to the Restaurant Defendants, Soho Hummus and Hen, including the assigning of defense counsel.

81.     NorGuard advised that Hen was an insured with respect to the conduct of Soho Hummus' business as its principal or his duty as its manager. NorGuard reserved the right to disclaim coverage based on conduct that is not with respect to the insured's business or conducted as a manager of the business.

82.     By correspondence dated September 9, 2021, AAIC accepted the tender from Fontana under the AAIC Policy issued to Soho Hummus. AAIC agreed to assign defense counsel to Fontana, Ilibassi, and Chen—the Landlord Defendants—subject to a reservation of rights.

83.     AAIC never advised Soho Hummus, Hen, or the Tenant Defendants of its coverage position.

84.     AAIC never disclaimed coverage to Soho Hummus or Hen.

85.     AAIC and NorGuard agreed to split defense costs for the Landlord Defendants 50/50.

86.     By correspondence dated July 15, 2024, AAIC advised that it would no longer provide a defense to the Landlord Defendants in the Underlying Action because it concluded the

claim did not fall within the scope of coverage under the AAIC Policy based on the date of the first noise complaint.

87.    The noise complaints in 2017 were related to construction activity before Soho Hummus opened and are unrelated to the Restaurant's activities after it opened in 2018.

88.    AAIC did not commence a declaratory judgment action seeking a declaration that it had no obligation to defend or indemnify the Landlord Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
## LACK OF AN OCCURRENCE

89.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

90.    There is no coverage for "bodily injury" in the Underlying Action because the conduct plead does not fall within the Policy's grant of coverage.

91.    The Policy provides coverage for sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" only if it is caused by an "occurrence" during the policy period.

92.    There are no allegations of "property damage" by the Tenant Defendants.

93.    An "occurrence" is defined by the Policy as an accident, including continuous or repeated exposure to substantially the same harmful conditions.

94.    The conduct alleged within the Summons With Notice, Verified Complaint, and affidavits filed in support of the OTSC is not an "occurrence."

95.    The pleadings and affidavits in the Underlying Action do not allege acts by the underlying defendants that are an accident.

96.     Further, the conduct alleged includes an intent and purpose to drive the Tenant Defendants out of their rent-controlled apartments and/or to retaliate against the Tenant Defendants for making complaints to local authorities.

97.     Such alleged conduct cannot be an accident.

98.     Because the well-plead factual allegations in the Underlying Action do not allege an "occurrence," NorGuard has no obligation to defend or indemnify any of the underlying defendants for alleged claims of bodily injury or property damage.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
<u>**ALLEGATIONS AGAINST LANDLORD DEFENDANTS NOT ARISING**</u>
<u>**OUT OF THE USE OF THE PREMISES AT 19 CLEVELAND PLACE**</u>

99.     NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

100.    There is no obligation to defend or indemnify the Landlord Defendants for alleged conduct and any causes of action against the Landlord Defendants that do not arise out of the use of the leased Premises at 19 Cleveland Place, under the Additional Insured – Managers or Lessors of Premises endorsement.

101.    The Additional Insured – Managers or Lessors of Premises endorsement only provides coverage for "liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule."

102.    The Designated Premises is the Restaurant at 19 Cleveland Place.

103.    All allegations against the Landlord Defendants arising out of the ownership and lease of the residential apartments fail to trigger additional insured coverage under the NorGuard Policy.

104.    NorGuard owes no duty to defend or indemnify the Landlord Defendants for allegations that do not "arise out of the ownership, maintenance or use that part of the premises leased to [Soho Hummus] …."

105.    Because the allegations by the Tenant Defendants arising from the ownership, use, or maintenance of the residential apartments do not arise out of the leased premises in the Premises described in the Policy's schedule, NorGuard is not obligated to defend or indemnify the Landlord Defendants for such claims.

## AS AND FOR A THIRD CAUSE OF ACTION
## INTENTIONAL ACTS

106.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

107.    NorGuard has no obligation to defend or indemnify Soho Hummus, Hen, or the Landlord Defendants in the Underlying Action because the NorGuard Policy excludes coverage for expected or intended injury.

108.    The NorGuard Policy will not pay for "bodily injury" or "property damage" that is expected or intended from the standpoint of any insured.

109.    "Bodily injury" includes mental anguish and emotional distress.

110.    The Tenant Defendants allege in the Underlying Action that the Landlord and Restaurant Defendants acted in concert to cause intentional infliction of emotional distress in addition to harassment, intimidation, and nuisance.

111.    The Tenant Defendants allege that the Landlord and Restaurant Defendants blocked, harassed, pushed, shoved, forcibly touched, abused, and threatened them.

112.    The acts alleged by the Tenant Defendants against the Landlord and Restaurant Defendants are claimed to be willful and intentional.

113.    The Tenant Defendants further allege that the Restaurant and Landlord Defendants acted in retaliation for the Tenant Defendants asserting their legal right to a safe, habitable living environment, as well as having the intent to drive them from their rent-controlled apartments.

114.    The elements of a claim for intentional infliction of emotional distress include an intent to cause or disregard a substantial probability of causing severe emotional distress.

115.    Allegations of harassment, intimidation, pushing, shoving, abusing, threatening the Tenant Defendants and other such conduct includes an element of intent. Such allegations of intentional conduct is excluded under the exclusion for expected or intended injury.

116.    The allegations of nuisance include an element of intent to interfere with the Tenant Defendants' enjoyment and use of their apartments in retaliation for the Tenant Defendants asserting their legal right to a safe, habitable living environment, as well as having the intent to drive them from their rent-controlled apartments

117.    The Verified Complaint alleges that Ilibassi told Lawrence if she would stop making complaints to government authorities about Soho Hummus, then he would "stop" Hen from terrorizing her with noise.

118.    The pleadings in the Underlying Action allege that Hen harassed, physically threatened, and terrorized Lawrence, Fleischer, Fleischer's three-year-old daughter, and Sperry.

119.    The Policy's exclusion for expected or intended injury bars coverage, and NorGuard has no obligation to defend or indemnify any of the underlying defendants for the Tenant Defendants' allegations of bodily injury or property damage asserted in the Underlying Action.

## AS AND FOR A FOURTH CAUSE OF ACTION
## CRIMINAL ACTS EXCLUSION

120.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

121.    There is no coverage under the Policy for "bodily injury," "property damage," or "personal and advertising injury" arising out of the alleged criminal acts committed by or at the direction of any insured.

122.    The Tenant Defendants allege that the Restaurant and Landlord Defendants have conducted an organized, willful, illegal, and continuous course of conduct to harass, threaten, humiliate and abuse the individual tenants in retaliation for them asserting their legal rights to a safe, habitable living environment.

123.    The Tenant Defendants allege that the Landlord and Restaurant Defendants blocked, harassed, pushed, shoved, forcibly touched, abused, and threatened them.

124.    The alleged conduct by the Restaurant or Landlord Defendants constitutes one or more criminal acts.

125.    NorGuard has no duty to defend or indemnify any of the underlying defendants because the Tenant Defendants allege criminal conduct that was committed by or at the direction of any insured.

## AS AND FOR A FIFTH CAUSE OF ACTION
## NO PERSONAL AND ADVERTISING INJURY COVERAGE

126.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

127.    The NorGuard Policy provides a grant of coverage for alleged damages because of a "personal and advertising injury" offense arising out of the named insured's business.

128.    None of the "personal and advertising injury" offenses alleged by the Tenant Defendants against the Landlord Defendants arises from the business of Soho Hummus.

129.    Because none of the "personal and advertising injury" offenses alleged by the Tenant Defendants against the Landlord Defendants arises from the business of Soho Hummus,

NorGuard has no duty to defend or indemnify the Landlord Defendants for damages because of "personal and advertising injury."

130.    None of the "personal and advertising injury" offenses alleged by the Tenant Defendants against the Restaurant Defendants arises from the business of Soho Hummus.

131.    Because none of the "personal and advertising injury" offenses alleged by the Tenant Defendants against the Restaurant Defendants arises from the business of Soho Hummus, NorGuard has no duty to defend or indemnify the Restaurant Defendants for damages because of "personal and advertising injury."

132.    In addition, there is no duty to defend or indemnify any insured for a "personal or advertising injury" offense caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

133.    The pleadings and affidavits in the Underlying Action contain allegations of wrongful/constructive eviction of the Tenant Defendants caused by the conduct of the Restaurant and Landlord Defendants.

134.    The pleadings and affidavits in the Underlying Action allege that any such constructive eviction was purposeful and intentional through acts including harassment, intimidation, blocking of ingress and egress, excessive noise, and noise after allowable operating hours.

135.    The pleadings and affidavits in the Underlying Action allege that any such constructive eviction was purposeful and done with the knowledge that the act would violate the rights of the Tenant Defendants.

136.    The Tenant Defendants allege that due to the intentional and willful conspiratorial conduct of the Landlord and Restaurant Defendants that was designed to retaliate against the Tenant Defendants and drive them from their rent-controlled apartments, the Tenant Defendants have been constructively evicted.

137.    If it is deemed that there is a "personal and advertising injury" offense arising out of the business of Soho Hummus, because the underlying pleadings and affidavits allege a personal and advertising injury offense against the Landlord and Restaurant Defendants, "Caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury,'" NorGuard owes no duty to defend or indemnify any insured

138.    The Tenants Defendants also allege slander and/or libel because Hen knowingly made a false complaint to Child Protective Services against Fleischer.

139.    NorGuard owes no duty to defend or indemnify Hen or any other insured for claims of slander and/or libel because the underlying pleadings and affidavits allege that said offense was made with knowledge of its falsity.

140.    For all of the above reasons, NorGuard owes no duty to defend or indemnify any insured for allegations of a "personal and advertising injury" offense.

## AS AND FOR A SIXTH CAUSE OF ACTION
## PUNITIVE DAMAGES, INJUNCTIVE RELIEF, AND ATTORNEYS' FEES

141.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

142.    There is no coverage under the NorGuard Policy for the relief sought in the Verified Complaint to the extent that it falls outside of the scope of coverage under the NorGuard Policy or is otherwise prohibited by law or public policy.

143.    The NorGuard Policy's insuring agreement provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies."

144.    In addition to monetary relief, the Tenant Defendants seek punitive damages, injunctive relief, and attorneys' fees against the Landlord Defendants for breach of the tenants' leases.

145.    Punitive damages are not insurable as a matter of public policy under New York law, so there cannot be coverage for punitive damages under the NorGuard Policy.

146.    Injunctive relief does not constitute damages because of "bodily injury," "property damage," or "personal and advertising injury" so there is no possibility of coverage for such relief.

147.    NorGuard Policy does not contain any provision creating coverage for attorneys' fees sought in connection with the Landlord Defendants' alleged breach of the tenant's leases.

148.    Attorneys' fees are not those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', or 'personal and advertising injury'.

149.    Under New York law, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement, statute, or court rule.

150.    Attorneys' fees do not arise out of the acts of the Restaurant Defendants because they relate solely to the conduct of the Landlord Defendants with respect to the residential apartments and not the leased Premises.

151.    Accordingly, NorGuard has no obligation to defend or indemnify any insured for injunctive relief, punitive or exemplary damages, or attorney's fees.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## PERSONAL AND ADVERTISING INJURY ARISING OUT OF
## HARASSMENT/HUMILIATION

152.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

153.    There is no coverage under the Policy for "personal and advertising injury" arising out of discrimination, harassment, or humiliation by an officer, director, member, or partner of the insured.

154.    The Verified Complaint alleges that the Restaurant and Landlord Defendants humiliated and harassed the Tenant Defendants, as part of a concerted effort to wrongfully evict them in retaliation for their complaints about the noise and crowds from the Restaurant.

155.    Accordingly, NorGuard has no obligation to defend or indemnify any insured for the Tenant Defendants' allegations of harassment or humiliation by the Restaurant and Landlord Defendants.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST AAIC
## EQUITABLE CONTRIBUTION

156.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

157.    NorGuard is entitled to a declaration that AAIC is obligated to reimburse defense costs paid by NorGuard following AAIC's wrongful withdrawal from the defense of the Landlord Defendants in the Underlying Action.

158.    AAIC must reimburse NorGuard based on the principle of equitable contribution.

159.    An insurer must provide a defense when the facts and allegations in the complaint create a reasonable possibility of coverage. The duty to defend is broader than the duty to indemnify.

160.    Where insurance policies provide coverage for the same interest and against the same risk, concurrent coverage exists, and two or more primary insurers will be held to be coinsurers.

161.    AAIC issued a Reservation of Rights, by correspondence dated September 9, 2021, to Fontana. The Reservation of Rights advised that AAIC would provide a defense to Fontana, Ilibassi, and Chen.

162.    At no point did AAIC issue a disclaimer of coverage as to any exclusions or conditions contained in the AAIC Policy.

163.    AAIC did not disclaim coverage as a result of late notice.

164.    AAIC did not establish that if there was late notice that it was materially prejudiced by such late notice.

165.    AAIC did not establish that the Landlord Defendants were aware of "bodily injury" or "property damage" occurring prior to the AAIC policy period.

166.    AAIC did not establish that the Landlord Defendants received a demand for damages because of "bodily injury" or "property damages" prior to the policy period.

167.    By correspondence dated July 15, 2024, AAIC improperly withdrew from the Landlord Defendants' defense in the Underlying Action, claiming discovery revealed the first noise complaints were made in 2017 before its policy period.

168.    AAIC's withdrawal from the defense of the Landlord Defendants ignores that the Tenant Defendants alleged potentially covered conduct against the Landlord Defendants that occurred during AAIC's policy period.

169.    AAIC stated that it was withdrawing from the defense and that Restaurant Defendants needed to assume the cost of their own defense effective 30 days from receipt of the

letter. AAIC also reserved the right to seek reimbursement for all or a portion of the sums paid or advanced by AAIC toward attorneys' fees, costs, investigation, or any other sums in connection with the litigation.

170.    Even if AAIC had issued a disclaimer, its initial coverage letter is untimely and failed to provide notice to the Tenant Defendants or to Soho Hummus.

171.    AAIC failed to provide notice to the additional insureds under the AAIC policy.

172.    AAIC received the Verified Complaint in the Underlying Action on July 16, 2021, but it waited until September 9, 2021, to issue a Reservation of Rights.

173.    A delay of over 30 days after the insurer has knowledge of the grounds to disclaim based on an exclusion or breach of a policy condition is untimely under New York Insurance Law Section 3420(d)(2).

174.    AAIC's coverage position is also incorrect. Even if the first noise complaints, of which there is no indication the insured had notice of the complaints prior to the inception of the AAIC policy, occurred prior to the policy period, the allegations in the Underlying Action are of a continuing nature that would have continued into the AAIC policy period. In addition, AAIC improperly concluded that the Verified Complaint did not contain allegations of bodily injury; however, the underlying plaintiffs alleged mental anguish and emotional distress due to the alleged acts of the Landlord and Restaurant Defendants.

175.    Further, AAIC did not address the allegations of "personal and advertising injury" due to the alleged constructive eviction in its coverage position letter.

176.    Under New York law, AAIC was required to seek a judicial declaration of no coverage before attempting to withdraw in the Underlying Action.

177.    Now, NorGuard seeks a declaration that AAIC has a duty to defend and indemnify the Landlord Defendants and contribute its share of the defense costs incurred in the defense of the Landlord Defendants in the Underlying Action.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST FIREMAN'S FUND

178.    NorGuard repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

179.    Fireman's Fund provided four consecutive commercial general liability policies to the Landlord Defendants covering the premises at 19 Cleveland Place:  HRG2005240-18 (June 1, 2018 to June 1, 2019);  HRG2005240-19 (June 1, 2019 to June 1, 2020); HRG2005240-20 (June 1, 2020 to June 1, 2021); HRG2005240-21 (June 1, 2021 to June 1, 2022). The policies are collectively referred to as the "Fireman's Fund Policy."

180.    The Fireman's Fund Policy contains a $1,000,000 per occurrence limit.

181.    The Fireman's Fund Policy obligates it to provide a defense and indemnity to the Landlord Defendants for the Underlying Action.

182.    NorGuard seeks a declaration that the Fireman's Fund Policy owes a duty to defend and indemnify the Landlord Defendants in the Underlying Action.

**WHEREFORE,** the plaintiff,   NorGUARD INSURANCE COMPANY, respectfully requests a declaratory judgment and Order in its favor against all Defendants as follows:

(1)    Declaring NorGuard has no obligation to defend or indemnify Soho Hummus, Hen, Fontana, Chen, or Ilibassi for the allegations in the Underlying Action;

(2)    Declaring NorGuard may withdraw from the defense it has been providing Soho Hummus, Hen, Fontana, Chen, and Ilibassi in the Underlying Action;

(3)    Declaring that AAIC must defend and indemnify Fontana, Chen, and Ilibassi in the Underlying Action;

(4)    Ordering AAIC to contribute towards the defense costs incurred in the defense of Fontana, Chen, and Ilibassi in the Underlying Action based on the principle of equitable contribution;

(5)    Declaring that Fireman's Fund must defend and indemnify Fontana, Chen, and Ilibassi in the Underlying Action; and

(6)    Granting such other, further, and/or different relief as may be just, equitable and proper, together with the costs and disbursements of this declaratory judgment action.


DATED:    Melville, New York
          April 23, 2025

                                      HURWITZ FINE P.C.



                          By:    _____
                                      Lee S. Siegel, Esq.
                                      Katherine A. Fleming, Esq.
                                      *Attorneys for Plaintiff,*
                                      *NorGUARD INSURANCE COMPANY*
                                      25 Melville Park Road, Suite 260
                                      Melville, New York 11747
                                      (631) 465-0700
                                      lss@hurwitzfine.com